## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Maureen Gibson, Special Agent with the Federal Bureau of Investigation (FBI), being duly sworn, depose and state under penalty of perjury that the following is true to the best of my information, knowledge and belief.

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the FBI and have been since 2016. I am currently assigned to the Denver Division of the FBI, and specifically to the Organized Crime and Drug Enforcement Task Force (OCDETF) Strike Force Group II and Squad CR-4 of the FBI. I investigate money laundering and drug trafficking in the normal course of my duties, and I am fully familiar with the facts of the case. During the course of my career, I have been an affiant on several Title III wiretap affidavits related to narcotics, and I have participated in several narcotics investigations involving controlled substances, including, but not limited to, heroin, cocaine, and methamphetamine. I also have investigated individuals in other cases involving controlled substances, and the possession of firearms by prohibited persons. I routinely work with FBI agents and Task Force Officers with more experience than I have and benefit from their experience.

2. My duties and responsibilities include serving as a backup Airport Liaison for the Denver Division of the FBI. In my capacity as a backup airport liaison I routinely serve as the point of contact for any potential federal violations related to the airplane operations within the United States. These violations includes interference with the flight crew, along with other federal violations related to the operation of the aircraft within the United States.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officials, and witnesses. Much of this affidavit is from information provided to me by other law enforcement officers, namely from members of the Denver Police Department who serve in the Denver International Airport in

3

some capacity. This affidavit is intended to show merely that there is sufficient probable cause for the requested arrest warrant and criminal complaint and does not set forth all of my knowledge about this matter.

4. I submit probable cause exists to believe that, on or about November 24, 2019, in the State and District of Colorado, TONY JACKSON, did knowingly and intentionally interfere with flight crew members, in violation of Title 49, United States Code, Section 46504.

## FACTS IN SUPPORT OF PROBABLE CAUSE

*Background about JACKSON*

5. JACKSON is currently in local custody at the Denver Sheriff's Department, awaiting federal charges for violations of Title 49, United States Code, Section 46504. JACKSON is a United States Citizen, born in Chicago, Illinois on May 25, 1978. JACKSON has a lengthy criminal history in Illinois including drug violations, traffic violations, Burglary, and Vehicle Theft.

*Flight Disturbance on November 24, 2019*

6. On November 24, 2019, I was contacted by the Denver Police Department about an incoming flight, AA2258, where there was a reported level three alert disturbance on the aircraft. The aircraft crew was requesting an emergency diversion to Denver International Airport. The original flight route was from McCarran International Airport, LAS, to Chicago O'Hare International Airport, ORD. The flight diverted to Denver International Airport, DEN and pulled up to the gate at approximately 8:02am in Terminal A, Gate A48.

7. I spoke with multiple passengers and with the four (4) flight crew personnel assigned to AA2258. The flight crew, C.T., S.L., E. R.-G., ,and T.R. all witnessed and made statements regarding the disturbance as detailed below.

8. The aircraft departed LAS as normal, and service was provided to the passengers onboard the aircraft. Following the airplane service, two female passengers, T.G., 18B, and P.T.,

18A, came to the back of the plane, visibly upset and explained to flight attendants that the male passenger, TONY JACKSON, in seat 18C was acting erratic and upsetting both T.G. and P.T., saying that one of the women "had a knife." They expressed fear to flight attendants, S.L. and T.R., and asked to be moved. Around the time that this interaction was taking place, flight attendants and passengers observed JACKSON move forward to the cockpit and approach an additional flight attendant in the first-class cabin, E. R.-G. JACKSON told E. R.-G. that one of the passengers seated next to him had a knife, at which point an additional flight attendant, C.T. joined JACKSON and E. R.-G. near the cockpit. C.T. attempted to diffuse the situation and get JACKSON to return to his seat. C.T. noted in her statement to me, as well as her written statement that throughout the course of their interaction, JACKSON made no eye contact, acted erratically, while using an elevated voice. She noted that he kept changing his statement regarding the location of the knife on the female passenger. C.T. repeatedly asked JACKSON to return to his seat, and he reluctantly went back towards his seat, grabbed his suitcase and said he wouldn't move until the authorities came.

9. Due to the increasing erratic behavior, and escalating situation, acting as they thought, in the best interest of the safety of the passengers and themselves, the pilots and crew made the determination to divert the plane and make an emergency landing in Denver, Colorado. The flight attendants were able to get JACKSON to move to the window seat in his previous row, and requested that two male passengers sit next to JACKSON, rather than the original female passengers. JACKSON continued to act erratically and threatened to bang his head against the wall and tear things apart. This led to the flight attendant, T.R., requesting that the male passenger restrain JACKSON with flex cuffs. After JACKSON was restrained, he remained relatively calm until the flight was successfully diverted to Denver International Airport.

10. I interviewed JACKSON in a holding cell after interviewing several people, including the four members of the flight crew, the two male passengers who sat next to JACKSON, and the

two female passengers who originally sat next to JACKSON.  JACKSON was read his Miranda Rights, per FBI form FD-395, indicated that he understood his rights, waived his rights, and agreed to talk with me and DPD Officer Stack without the presence of an attorney.  JACKSON maintained, throughout the interview, which was audio recorded, that the female passengers he was seated next to, specifically P.T. had a knife and he was trying to protect the plane.

## CONCLUSION

11. Based on the facts set forth above, I submit probable cause exists to believe that, on November 24, 2019, in the State and District of Colorado, TONY JACKSON, did knowingly and intentionally interfere with a flight crew member, in violation of Title 49, United States Code, Section 46504. Therefore, I respectfully request the issuance of an arrest warrant and criminal complaint charging the same.

I, Maureen Gibson, being duly sworn according to law, depose and say that the facts stated in the foregoing affidavit are true and correct to the best of my knowledge, information and belief.

*s/Maureen Gibson*
Maureen Gibson
Special Agent
FBI

Submitted, attested to, and acknowledged by reliable electronic means on November 25, 2019.

The Honorable Scott T. Varholak
United States Magistrate Judge

**Affidavit reviewed, approved, and submitted by Martha A. Paluch Assistant United States Attorney.**

6